IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BOBBY MILLER                          §
TDCJ No. 2126115,                     §
                                      §
            Petitioner,               §
                                      §
V.                                    §          No. 3:20-cv-388-D-BN
                                      §
DIRECTOR, TDCJ-CID,                   §
                                      §
            Respondent.               §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Petitioner Bobby Miller ("Miller"), a Texas prisoner serving fifty years after being convicted of aggravated robbery in Dallas County, has submitted a *pro se* writ of habeas corpus under 28 U.S.C. § 2254. *See* Dkt. No. 3. The Court has referred Miller's habeas action to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Sidney A. Fitzwater.

The undersigned now enters these findings of fact, conclusions of law, and recommendation that Miller's habeas petition should be denied.

### Applicable Background

Miller collaterally attacks his March 24, 2017 Dallas County aggravated robbery conviction for which he was sentenced to a fifty-year prison sentence. *See State v. Miller*, No. F-15-76030-P (203rd Jud. Dist. Ct., Dallas Cnty., Tex.

1

Mar. 24, 2017). Miller's conviction and sentence were affirmed on direct appeal. *Miller v. State*, No. 05-17-00320-CR, 2018 WL 3237999 (Tex. App. – Dallas, 2018, pet. ref'd). The Texas Court of Criminal Appeals ("TCCA") then rejected Miller's petition for discretionary review ("PDR"). *Id.*; *see also Miller v. State*, No. PD-748-18 (Tex. Crim. App. Dec. 5, 2018). And – after the state habeas trial court issued findings of fact and conclusions of law – the TCCA denied Miller's petition for a writ of habeas corpus without written order. *See Ex parte Miller*, WR-90,640-01 (Tex. Crim. App. Dec. 4, 2019); *see also* Dkt. No. 13-1 at 39, 46-49.

Miller then filed a *pro se* 28 U.S.C. § 2254 habeas petition [Dkt. No. 3] and accompanying memorandum [Dkt. No. 4]. The State filed a response. Dkt. No. 13. Miller filed a reply to that response. Dkt. No. 17.

## Legal Standards

"Federal habeas features an intricate procedural blend of statutory and caselaw authority." *Adekeye v. Davis*, 938 F.3d 678, 682 (5th Cir. 2019). In the district court, this process begins – and often ends – with the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), under which "state prisoners face strict procedural requirements and a high standard of review." *Adekeye*, 938 F.3d at 682 (citation omitted).

Under the AEDPA, where a state court has already rejected a claim on the merits, a federal court may grant habeas relief on that claim only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Adekeye*, 938 F.3d at 682 ("Once state remedies are exhausted, AEDPA limits federal relief to cases where the state court's decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or was 'based on an unreasonable determination of the facts in light of the evidence presented.'" (citation omitted)); *see also Allen v. Vannoy*, 659 F. App'x 792, 798-99 (5th Cir. 2016) (per curiam) (describing Section 2254(d) as "impos[ing] two significant restrictions on federal review of a habeas claim ... 'adjudicated on the merits in state court proceedings'").

And "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *see also Sanchez v. Davis*, 936 F.3d 300, 305 (5th Cir. 2019) ("[T]his is habeas, not a direct appeal, so our focus is narrowed. We ask not whether the state court denial of relief was incorrect, but whether it was unreasonable – whether its decision was 'so lacking in justification' as to remove 'any possibility for fairminded disagreement.'" (citation omitted)).

A state court decision is "contrary" to clearly established federal law if

3

"it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004); *see also Lopez v. Smith*, 574 U.S. 1, 2 (2014) (per curiam) ("We have emphasized, time and time again, that the [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'" (citation omitted)).

"A state court unreasonably applies clearly established Supreme Court precedent when it improperly identifies the governing legal principle, unreasonably extends (or refuses to extend) a legal principle to a new context, or when it gets the principle right but 'applies it unreasonably to the facts of a particular prisoner's case.'" *Will v. Lumpkin*, 978 F.3d 933, 940 (5th Cir. 2020) (quoting *Williams v. Taylor*, 529 U.S. 362, 407-08 (2000); citation omitted)). "But the Supreme Court has only clearly established precedent if it has 'broken sufficient legal ground to establish an asked-for constitutional principle.'" *Id.* (quoting *Taylor*, 569 U.S. at 380-82; citations omitted).

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.... A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citations and internal quotation marks omitted). "Under § 2254(d), a habeas court must determine

what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102 (internal quotation marks omitted); *see also Evans v. Davis*, 875 F.3d 210, 216 (5th Cir. 2017) (recognizing that Section 2254(d) tasks courts "with considering not only the arguments and theories the state habeas court actually relied upon to reach its ultimate decision but also all the arguments and theories it could have relied upon" (citation omitted)).

The Supreme Court has further explained that "[e]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Richter*, 562 U.S. at 101 (internal quotation marks omitted). And "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102. The Supreme Court has explained that, "[i]f this standard is difficult to meet, that is because it was meant to be," where, "[a]s amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings," but "[i]t preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents," and "[i]t goes no further." *Id.* Thus, "[a]s a condition for obtaining habeas corpus from a federal

court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *accord Burt v. Titlow*, 571 U.S. 12, 20 (2013) ("If this standard is difficult to meet – and it is – that is because it was meant to be. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy." (internal quotation marks, brackets, and citations omitted)).

As to Section 2254(d)(2)'s requirement that a petitioner show that the state court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," the Supreme Court has explained that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance" and that federal habeas relief is precluded even where the state court's factual determination is debatable. *Wood v. Allen*, 558 U.S. 290, 301, 303 (2010). Under this standard, "it is not enough to show that a state court's decision was incorrect or erroneous. Rather, a petitioner must show that the decision was objectively unreasonable, a substantially higher threshold requiring the petitioner to show that a reasonable factfinder must conclude that the state court's determination of the facts was unreasonable." *Batchelor v. Cain*, 682

F.3d 400, 405 (5th Cir. 2012) (brackets and internal quotation marks omitted).

The Court must presume that a state court's factual determinations are correct and can find those factual findings unreasonable only where the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001).

This presumption applies not only to explicit findings of fact but also "to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact." *Valdez v. Cockrell*, 274 F.3d 941, 948 n.11 (5th Cir. 2001); *see also Ford v. Davis*, 910 F.3d 232, 235 (5th Cir. 2018) (Section 2254(e)(1) "'deference extends not only to express findings of fact, but to the implicit findings of the state court.' As long as there is 'some indication of the legal basis for the state court's denial of relief,' the district court may infer the state court's factual findings even if they were not expressly made." (footnotes omitted)).

And, even if the state court errs in its factual findings, mere error is not enough – the state court's decision must be "*based* on an unreasonable factual determination. … In other words, even if the [state court] had gotten [the disputed] factual determination right, its conclusion wouldn't have changed." *Will*, 978 F.3d at 942.

Further, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an

7

opinion from the state court explaining the state court's reasoning." *Richter*, 562 U.S. at 98; *see also Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003) ("a federal habeas court is authorized by Section 2254(d) to review only a state court's 'decision,' and not the written opinion explaining that decision" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam))); *Evans*, 875 F.3d at 216 n.4 (even where "[t]he state habeas court's analysis [is] far from thorough," a federal court "may not review [that] decision de novo simply because [it finds the state court's] written opinion 'unsatisfactory'" (quoting *Neal*, 286 F.3d at 246)).

Section 2254 thus creates a "highly deferential standard for evaluating state court rulings, which demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). To overcome this standard, a petitioner must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. That is, a petitioner must, in sum, "show, based on the state-court record alone, that any argument or theory the state habeas court could have relied on to deny [him] relief would have either been contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court." *Evans*, 875 F.3d at 217.

## Analysis

### A.    Ineffective Assistance of Counsel ("IAC")

Miller claims that his trial counsel represented him ineffectively by: (1) failing to investigate and uncover exculpatory evidence, (2) denying him a speedy trial by delaying his trial and belatedly meeting with him, and (3) having a "conflict of interest" by failing to adequately investigate his case and communicate with him. Dkt. No. 3 at 6-7.

The Court reviews the merits of properly exhausted IAC claims, whether directed at trial or appellate counsel, under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984), under which a petitioner "'must show that counsel's performance'" – "'strongly presume[d to be] good enough'" – "'was [1] objectively unreasonable and [2] prejudiced him.'" *Coleman v. Vannoy*, 963 F.3d 429, 432 (5th Cir. 2020) (quoting *Howard v. Davis*, 959 F.3d 168, 171 (5th Cir. 2020)).

To count as objectively unreasonable, counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687; *see also Buck v. Davis*, 137 S. Ct. 759, 775 (2017) (reaffirming that "[i]t is only when the lawyer's errors were 'so serious that counsel was not functioning as the "counsel" guaranteed ... by the Sixth Amendment' that *Strickland*'s first prong is satisfied" (citation omitted)). "And to establish prejudice, a defendant must show 'that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different.'"
*Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (per curiam) (quoting *Strickland*,
466 U.S. at 694).

"A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Cotton v. Cockrell*, 343 F.3d 746, 752-53 (5th Cir. 2003); *see also Feldman v. Thaler*, 695 F.3d 372, 378 (5th Cir. 2012) ("[B]ecause of the risk that hindsight bias will cloud a court's review of counsel's trial strategy, 'a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" (quoting *Strickland*, 466 U.S. at 689)).

And, "[j]ust as there is no expectation that competent counsel will be a flawless strategist or tactician, an attorney may not be faulted for a reasonable miscalculation or lack of foresight or for failing to prepare for what appear to be remote possibilities." *Richter*, 562 U.S. at 110. "The Supreme Court has admonished courts reviewing a state court's denial of habeas relief under AEDPA that they are required not simply to give [the] attorney's the benefit of the doubt, ... but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." *Clark v. Thaler*, 673 F.3d 410, 421 (5th Cir. 2012) (internal quotation marks omitted).

Therefore, on habeas review under AEDPA, "if there is any 'reasonable argument that counsel satisfied *Strickland*'s deferential standard,' the state court's denial must be upheld." *Rhoades v. Davis*, 852 F.3d 422, 432 (5th Cir. 2017) (quoting *Richter*, 562 U.S. at 105); *see also Sanchez*, 936 F.3d at 305 ("As the State rightly puts it, we defer 'both to trial counsel's reasoned performance and then again to the state habeas court's assessment of that performance.'" (quoting *Rhoades*, 852 F.3d at 434)).

To demonstrate prejudice, a habeas petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Thus, "the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Richter*, 562 U.S. at 111. "Instead, *Strickland* asks whether it is 'reasonably likely' the result would have been different," which "does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only in the rarest case.'" *Id.* at 111-12 (quoting *Strickland*, 466 U.S. at 693, 696, 697). "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

IAC claims are considered mixed questions of law and fact and are

therefore analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010); *Adekeye*, 938 F.3d at 682.

Where the state court has adjudicated claims of ineffective assistance on the merits, this Court must review a habeas petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *Cullen v. Pinholster*, 563 U.S. 170, 190, 202 (2011); *compare Rhoades*, 852 F.3d at 434 ("Our federal habeas review of a state court's denial of an ineffective-assistance-of-counsel claim is 'doubly deferential' because we take a highly deferential look at counsel's performance through the deferential lens of § 2254(d)." (citation omitted)), *with Johnson v. Sec'y, DOC*, 643 F.3d 907, 910-11 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.").

In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101; *see also id.* at 105 ("Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." (internal

quotation marks and citations omitted)). In other words, AEDPA does not permit a *de novo* review of state counsel's conduct in these claims under *Strickland. See id.* at 101-02. Instead, on federal habeas review of a *Strickland* claim fully adjudicated in state court, the state court's determination is granted "a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.* at 101.[1]

### (i)    *Failure to Investigate Exculpatory Evidence*

In his first IAC claim, Miller asserts that his trial counsel was constitutionally ineffective for failing to investigate, and ultimately obtain, security video footage and a receipt from an Olive Garden restaurant at which

---

[1] *See also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (per curiam) (explaining that federal habeas review of ineffective-assistance-of-counsel claims is "doubly deferential" "because counsel is 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment'"; therefore, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt'" (quoting *Burt*, 571 U.S. at 22, 15)); *Adekeye*, 938 F.3d at 683-84 ("The Supreme Court standard on prejudice is sharply defined: 'It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' [A petitioner] must show it was 'reasonably likely' the jury would have reached a different result, not merely that it could have reached a different result. The Court reaffirmed this point in *Richter*: 'The likelihood of a different result must be substantial, not just conceivable.' Now layer on top of that the habeas lens of reasonableness. [Where] the state court has already adjudicated [a petitioner's] ineffective-assistance claim on the merits, he must show that the court's no-prejudice decision is 'not only incorrect but "objectively unreasonable."' Put differently, [he] must show that every reasonable jurist would conclude that it is reasonable likely that [a petitioner] would have fared better at trial had his counsel conducted [himself differently]. 'It bears repeating,' the Supreme Court emphasized in *Richter*, 'that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable.'" (footnotes omitted)).

Miller claims he was eating with his wife at the time of the robbery for which he was arrested. *See* Dkt. No. 3 at 6; Dkt. No. 4 at 2.

"[Counsel has a duty to make a reasonable investigation of defendant's case or to make a reasonable decision that a particular investigation is unnecessary…" *Ransom v. Johnson*, 126 F.3d 716, 723 (5th Cir. 1997) (citing *Strickland*, 466 U.S. at 691). And whether counsel's investigation was reasonable depends in part on the information supplied by the defendant. *Ransom*, 126 F.3d at 723 (citing *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989)). A petitioner claiming inadequate investigation "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).

With those standards in mind, the TCCA's denial of Miller's first IAC claim was not an unreasonable application of *Strickland* because the record does not show that the evidence at issue was exculpatory. Instead, an investigative detective testified that she viewed all the pertinent Olive Garden security footage after Miller told her about the potential alibi. But Miller did not appear on that video footage. *See* Dkt. No. 13-1 at 41-42. The TCCA was not bound to accept Miller's bald, unsupported allegation that the security footage would have exonerated him. *See Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition,

unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value."); *see also Massey v. Denmark*, 3:14CV582 HTW-LRA, 2017 WL 813595, at *8 (S.D. Miss. Jan. 17, 2017), *rec. accepted* 2017 WL 812088 (S.D. Miss. Feb. 27, 2017) (rejecting IAC claim premised upon exculpatory evidence because "Massey presents nothing more than his own bare allegations that witnesses would have presented exonerating evidence; he presents no witness affidavits from Sessums or any other evidence to support his claims").

So too as for the unauthenticated and unverified Olive Garden receipt. This receipt, which was introduced during the punishment phase of trial, shows only that an unidentified person or persons ate at Olive Garden during the afternoon of July 24, 2015. *See* Dkt. No. 13-1 at 36-37. The receipt is insufficient to establish a reasonable probability that the result of the proceedings would have been different had Miller's trial counsel promptly discovered and introduced it at the guilt-innocence phase of the trial. *See Strickland*, 466 U.S. at 687.

Ultimately, as the state habeas trial court observed, "[Miller] [has not] shown that [the security video footage] would have been exculpatory." Doc. 13-1 at 47. So, the TCCA did not unreasonably apply *Strickland* in rejecting Miller's failure-to-investigate-exculpatory-evidence claim because Miller cannot show prejudice.

##### ii.    *Failure to Obtain Speedy Trial*

In his second IAC claim, Miller appears to assert that his trial counsel denied him his right to a speedy trial by failing to investigate the case for over a year and seeking and/or agreeing to 16 continuances. *See* Dkt. No. 3 at 6; Dkt. No. 4 at 1, 4.

But, as discussed below, Miller has not shown that he was deprived of his right to a speedy trial. Therefore, Miller's second IAC claim passes neither prong of the *Strickland* analysis and should be rejected. *See Young v. U.S.*, 953 F.Supp.2d 1049, 1063 (D.S.D. 2013) (finding that the petitioner could not establish an IAC claim predicated upon the failure to secure a speedy trial when the petitioner failed to demonstrate that he was, in fact, deprived of a speedy trial).

### iii.    *Conflict of Interest*

In his third IAC claim, Miller argues that his attorney was ineffective due to a conflict of interest. Specifically, Miller claims that his trial counsel lost his trust by initially meeting with a different Bobby Miller in the county jail, failing to secure the exculpatory evidence discussed above, and allowing the case to be "put off" 16 times before ever meeting Miller. *See* Dkt. No. 4 at 4.

The Sixth Amendment right to counsel includes the right to an attorney who is not "burdened by an actual conflict of interest." *Strickland*, 466 U.S. at 692. Normally, courts use the traditional *Strickland* standard to evaluate conflict of interest claims unless an "attorney's representation of multiple clients created a conflict of interest." *See Perillo v. Johnson*, 79 F.3d 441, 447

16

(5th Cir. 1996). In those latter cases, a petitioner "need only show that his attorney labored under an actual conflict which adversely affected his lawyer's performance." *Id.* (citing *Cuyler v. Sullivan*, 446 U.S. 335 (1980); further citations omitted)). Here, because Miller's conflict-of-interest claim does not involve the representation of multiple clients, a traditional *Strickland* analysis is appropriate.

And the TCCA did not unreasonably apply *Strickland* in rejecting Miller's third IAC claim. While the TCCA did not issue a written opinion, pursuant to the "look through" doctrine, this Court can look to the detailed findings of the state habeas trial court to glean the TCCA's reasoning. *See Gavin v. Stephens*, Civil Action NO. H-14-0501, 2014 WL 5426483, at *4 (S.D. Tex. Oct. 21, 2014) (applying "look through" doctrine to state habeas trial court's finding of fact when the TCCA denied relief without written order). The state habeas trial court found that Miller's counsel's performance – in failing to communicate with him for almost a year – was defective and falling below "professional norms." Dkt. No. 13-1 at 47. But the state habeas trial court also found that Miller failed to show prejudice. *See id.* at 48. And the undersigned agrees. Again, the record evidence hints that the Olive Garden footage was, if anything, potentially inculpatory. And Miller does not explain how he was prejudiced by his trial counsel mistakenly meeting with another Bobby Miller or only meeting with him, the correct Bobby Miller, after obtaining 16 trial continuances because, as discussed below, the TCCA did not err in refusing to

find that Miller's speedy trial rights were violated.

Miller responds that the state habeas trial court mistakenly stated in its findings of fact that "Applicant has not shown that the Olive Garden video existed or that it could have been obtained by [Miller's counsel]." *See* Dkt. No. 13-1 at 48; Dkt. No. 17 at 2. The basis for Miller's argument is an affidavit from his trial counsel (that is not in the record) in which his trial counsel supposedly "states that the State showed him the [Olive Garden security video footage]…" Dkt. No. 17 at 2. Even assuming this evidence exists and was presented in a proper way to the TCCA, it does not help Miller's cause. For one thing, it undercuts Miller's argument that his counsel never uncovered the security video footage. For another, nothing in Miller's summary of his trial counsel's affidavit indicates that the video footage was exculpatory.

At bottom, Miller's third IAC claim is meritless and should be dismissed.

## B.    Speedy Trial Claim

Liberally construing Miller's petition, he claims that he was denied a speedy trial. *See* Dkt. No. 4 at 3. The State argues that Miller procedurally defaulted this claim because he failed to raise it on direct appeal, and the TCCA accordingly rejected it as procedurally barred. The undersigned agrees.

The state habeas trial court, in recommending that relief on Miller's speedy trial claim be denied, noted that "[t]he Great Writ should not be used to litigate matters which should have been raised on direct appeal." Dkt. No. 13-1 at 49 (citing *Ex parte Banks*, 769 S.W.2d 539 (Tex. Crim. App. 1989)). The

18

TCCA, for its part, simply denied relief without reasons. When this happens, the federal court on habeas review "should 'look through' the unexplained decision to the last related state court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, ---U.S.---, 138 S. Ct. 1188, 1192 (2018) (looking through summary denial of state habeas claims to lower state habeas court's basis for denial of claims).

So, here, the TCCA found Miller's speedy trial claim procedurally defaulted. And this result aligns with well-established Texas jurisprudence, which dictates that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal. *Ex parte Gardner*, 959 S.W.2d 189, 199 (Tex. Crim. App. 1996), *on reh'g* (Feb. 4, 1998).

When the state habeas court "clearly and expressly" bases its denial of relief on an independent and adequate state rule of procedural default – like the requirement of raising claims on direct appeal – the federal court should generally refuse to consider the claim. *See Coleman v. Thompson*, 501 U.S. 722, 729-35 (1991); *Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004); *see also Cunningham v. Lumpkin*, Civil Action NO. 4:17-3122, 2021 WL 2723591, at *10 (S.D. Tex. June 30, 2021) ("The Fifth Circuit has recognized the ground articulated in *Gardner* as independent and adequate state rule that bars federal habeas relief.); citing *Aguilar v. Dretke*, 428 F.3d 526, 535 (5th Cir. 2005) (denying certificate of appealability because the state habeas court had

rejected petitioner's claim based on "the *Gardner* rule," which is an "adequate state ground capable of barring federal habeas review"; internal citation and quotation marks omitted); *Murphy v. Davis*, 737 F.App'x 693, 701-02 (5th Cir. 2018) (habeas claim that the petitioner failed to raise on direct appeal was rejected by the state habeas court based on an independent and adequate state procedural rule and therefore was procedurally barred on federal habeas)).

But a petitioner can overcome a procedural default by showing cause for the default and actual prejudice that is attributable to the default, or that the federal court's failure to consider the claim will result in a miscarriage of justice. *Coleman*, 501 U.S. at 750. Miller tries to meet this standard by arguing that his appellate counsel was ineffective for failing to raise the speedy trial claim on direct appeal, thus causing the default. *See* Dkt. No. 17 at 4. But Miller did not exhaust such an IAC claim before the TCCA, so it cannot serve as cause to overcome the procedural default. *See Smith v. King*, No. 1:17CV184-GHD-DAS, No. 1:19CV117-GHD-DAS, 2021 WL 4318301, at *8 n.8 (N.D. Miss. Sept. 22, 2021) (noting that, "[i]n order to argue ineffective assistance of counsel as cause to overcome the procedural bar, Smith would have to raise and exhaust, in his application for post-conviction relief, an independent claim of ineffective assistance of appellate counsel for failure to raise [the pertinent claims]"); citing *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Murray v. Carrier*, 477 U.S. 488-89 (1986)).

In sum, Miller procedurally defaulted his speedy trial claim because the

TCCA relied upon an adequate and independent state rule in refusing to consider it. The Court should reject it as well.

Alternatively, Miller's speedy trial claim fails on the merits. "The Sixth Amendment guarantees a defendant 'the right to a speedy and public trial.'" *Leachman v. Stephens*, 581 F. App'x 390, 402 (5th Cir. 2014) (quoting U.S. CONST. amend. VI). This right "applies to the states via incorporation by the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Divers v. Cain*, 698 F.3d 211, 215 (5th Cir. 2012)). And whether this right has been violated is "a mixed question of law and fact," which in the current context – federal habeas review of the state court's rejection of a speedy-trial claim – triggers "the deferential standard of 28 U.S.C. § 2254(d)(1)." *Amos v. Thornton*, 646 F.3d 199, 204 (5th Cir. 2011) (per curiam) (footnotes omitted). "Accordingly, [a state prisoner] is entitled to relief only if the state court's rejection of his speedy-trial claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as articulated by the decisions of the Supreme Court." *Id.* (footnote omitted).

> "Very few petitioners" can make the requisite showing, and due to the somewhat indeterminate and fact-intensive nature of the speedy trial right, [a federal court's] "always-substantial deference is at an apex." In resolving speedy trial issues, [the Court should] consider: "(1) the length of delay, (2) the reason for the delay, (3) the defendant's assertion of his right to speedy trial, and (4) prejudice to the defendant." The factors are guides that require a delicate balancing.

*Divers*, 698 F.3d at 217 (quoting *Amos*, 646 F.3d at 204-05); citation omitted));

*see also Speer v. Lumpkin*, 824 F.App'x 240, 244 (5th Cir. 2020) ("Because [the

21

speedy trial] right is 'amorphous,' 'imprecis[e],' 'necessarily relative,' and 'slippery,' the Supreme Court established 'a balancing test, in which the conduct of both the prosecution and the defendant are weighed.' Relevant factors include the length of the delay, the reason for it, the defendant's diligence in asserting the right, and whether the delay prejudices the defendant."); quoting *Barker v. Wingo*, 407 U.S. 514, 522 529-30 (1972), then citing *Vermont v. Brillon*, 556 U.S. 81, 90 (2009)).

The minimum delay necessary to trigger a *Barker* analysis is one year. And "[i]f this threshold showing is made, the court must examine the extent to which the delay extends beyond the bare minimum required to trigger a *Barker* analysis, because 'the presumption that pretrial delay has prejudiced the accused intensifies over time.'" *Goodrum v. Quarterman*, 547 F.3d 249, 257 (5th Cir. 2008) (quoting *Doggett v. United States*, 505 U.S. 647, 652 (1992)).

Turning to the analysis, twenty months elapsed between the date of Miller's arrest and trial, triggering an analysis of the remaining *Barker* factors below. *See* Dkt. No. 13-1 at 54-55; *see also* Dkt. No. 14-15 at 13, 110. But the Fifth Circuit has held that similar delays only slightly favor the petitioner. *See Laws v. Stephens*, 536 F.App'x. 409, 412 (5th Cir. 2013) ("Considering the first factor, the nearly 23-month delay between Law's arrest and trial weighs, at most, only slightly in his favor."); citing *Amos v. Thorton*, 646 F.3d 199, 206-07 (5th Cir. 2011) (reasoning that a delay of less than thirty months precludes the first *Barker* factor from "strongly favor[ing] the accused"); *Goodrum v.*

22

*Quarterman*, 547 F.3d 249, 260 (5th Cir. 2008) (noting that a presumption of prejudice from delay alone "applies only where the delay is at least [five] years")).

As to the second factor, the reason for the delay appears to have been several continuances, spanning from September 9, 2015 through October 24, 2016. Specifically, it appears that the State sought, and Miller though his counsel agreed to, sixteen continuances from September 9, 2015 through July 8, 2016.[2] Dkt. No. 13-1 at 54-55. Miller was appointed new counsel on July 2, 2016, and he demanded a speedy trial on August 4, 2016. *See id.* at 55. Trial was set for August 22, 2016, and the State announced that it was ready for trial, but Miller asked for a continuance and the trial was pushed back to October 24, 2016. *Id.*

With that background in mind, Miller, through his attorney, agreed to several of the State's sought continuances, which militates against casting blame on the State exclusively. *See Laws*, 536 F. App'x. at 413 (finding the second *Barker* factor neutral when the defendant agreed to the "vast majority" of resets sought by the State); *States v. Hall*, 711 F.App'x 198, 200-01 (5th Cir. 2017) (finding that delay was attributable to both parties, and, therefore, the

---

[2] There are no copies of the actual continuances in the record, but Miller did file a speedy trial motion, and the facts concerning the continuances and trial delay are contained in the State's response to that motion. *See* Dkt. No. 13-1 at 54-55. Miller's counsel agreed during the live hearing on the speedy trial motion that the facts were accurate. *See id.* at 52. And Miller does not appear to contest the pertinent timeline and facts bearing upon the speedy trial inquiry.

second *Barker* factor did not weigh heavily in the petitioner's favor where the petitioner agreed to multiple continuances and he did not allege that the state intentionally delayed his case to gain an unfair advantage). Indeed, Miller was responsible for the last continuance. Thus, the second factor of the *Barker* analysis is neutral.

As to the third factor – when the right was asserted – this factor favors the State. Miller asserted his speedy-trial right once, on August 4, 2016, which was over a year after his arrest. Dkt. No. 13-1 at 55. His trial was set twenty-two days later, but Miller then asked for another continuance. *See id.*

Even when a defendant asserts his right to a speedy trial, his failure to do so with appropriate haste may tip the third *Barker* factor against him. *See U.S. v. Parker*, 505 F.3d 323, 329-330 (5th Cir. 2007). The undersigned agrees with the State that Miller waiting twelve months after his arrest to assert his speedy trial right is a neutral factor in the analysis. *See id.* (waiting eight months to indicate a desire to proceed with trial and fourteen months to affirmatively assert the right to speedy trial weighs against finding a speedy trial violation). But Miller sought an additional continuance even after asserting his speedy trial right. The undersigned considers this continuance to be "indicative of the degree of seriousness with which [Miller] asserted his right to a speedy trial." *Robinson v. Whitley*, 2 F.3d 562, 59-70 (5th Cir. 1993). Thus, the third *Barker* factor favors the State.

And, finally, because Miller has not shown that the first three factors

weigh heavily in his favor, he must make an affirmative showing of actual prejudice. *See Hill v. Wainwright*, 617 F.2d 375, 378, n.4 (5th Cir. 1980) ("When the first three factors of the *Barker* balancing test are heavily weighed against the government, the defendant does not have to demonstrate prejudice."; citing *United States v. Avalos*, 541 F.2d 1100, 1116 (5th Cir. 1976); *Prince v. Alabama*, 507 F.2d 693, 706-07 (5th Cir. 1975); *Hoskins v. Wainwright*, 485 F.2d 1186, 1192 (5th Cir. 1973) (on rehearing))).

"In analyzing prejudice, [courts] look to three 'interests' that the speedy trial right 'was designed to protect': '(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.'" *Laws*, 536 F. App'x at 414 (quoting *Barker*, 407 U.S. at 532). "[T]he most serious concern is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*

Miller appears to argue that the delay impaired his ability to obtain the Olive Garden security footage. *See* Dkt. No. 17 at 3.; Dkt. No. 4 at 2. But, as discussed, there is no evidence that that footage helped his case in any way – the record evidence is to the contrary. Miller therefore does not show that the delay impacted his defense. As this is the most important component of the analysis, and Miller does not argue that he suffered anxiety or concern, Miller has not shown actual prejudice.

At bottom, only the first *Barker* factor potentially favors Miller, and,

25

even then, not substantially. Even were Miller's speedy trial claim not procedurally defaulted, it is substantively meritless.

**Recommendation**

The Court should deny Miller's application for a writ of habeas corpus.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

SO ORDERED.

DATED: November 1, 2021

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE